LAW OFFICES OF
**DRATEL & MYSLIWIEC, P.C.**
A PROFESSIONAL CORPORATION

2 WALL STREET
3rd Floor
NEW YORK, NEW YORK 10005
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
www.dratelmys.com

JOSHUA L. DRATEL
AARON MYSLIWIEC
—
ALICE L. FONTIER
LINDSAY A. LEWIS

STEVEN WRIGHT
*Office Manager*
RYAN DUFFEY
*Paralegal*

March 1, 2012

**BY ECF**

The Honorable John Gleeson
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Kaziu*,
09 Cr. 660 (JG)

Dear Judge Gleeson:

This letter is in regard to the sentencing of Betim Kaziu (whom I, along with David Stern, Esq., and Henry J. Steinglass, Esq., represent), and is submitted in reply to the government's February 28, 2012, letter (hereinafter "Gov't Letter") with respect to Mr. Kaziu's sentencing. This letter also addresses information obtained subsequent to my January 26, 2012, letter – such as the Pre-Sentence Report's recommendation – and provides a letter, attached hereto as Exhibit 1, on Mr. Kaziu's behalf from his cousin, Mandine Dubrova.[1]

For all the reasons set forth below, as well as in my January 26, 2012, letter (hereinafter "Dratel Letter"), it is respectfully submitted that the government's contention, in its letter, at 2, that a sentence "at or near the Guidelines sentence of life would be appropriate in this case" is insupportable. Indeed, the Pre-Sentence Report (hereinafter "PSR"), in recommending a sentence of 360 months' imprisonment – itself too long a sentence for the reasons set forth previously and below – acknowledges that a life sentence would be too severe. Moreover, the government concedes in its letter, at 2, that it "does not contend that a Guidelines sentence of life is the only appropriate sentence . . ."

---

[1] I will bring the original of Ms. Dubrova's letter to Court tomorrow.

**A. *The Government's Letter***

The predominant thread that runs throughout the government's letter is, essentially, that nothing can overcome the terrorism enhancement in §3A1.4 of the Guidelines, or the Guidelines generally. According to the government, the factors that distinguish defendants for sentencing purposes – *i.e.*, whether an offense is completed or inchoate (and whether any tangible harm resulted) (at 14),[2] the defendant's age (at 15),[3] his capacity to consummate the offense(s), and/or his education and maturity level – are unavailing in any terrorism case.

However, that position not only would return sentencing to a mandatory Guidelines regime, in violation of the Sixth Amendment, *United States v. Booker*, 543 U.S. 220 (2005) (*see also* Dratel Letter, at 3-5), but also ignores the Second Circuit's decision in *United States v. Dorvee*, 604 F.3d 84, 93 (2d Cir. 2010), which is discussed at length in Mr. Kaziu's initial sentencing submission. *See* Dratel Letter, at 3, 8-11. In fact, the government fails to confront *Dorvee* at all, not mentioning it even once in its 18-page letter.

Also, the government would eliminate any evaluation of an individual defendant's danger of recidivism over time, arguing that "because even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism[,]" Criminal History Category VI is appropriate herein despite Mr. Kaziu's lack of any prior criminal record. Govt. Letter, at 8, *quoting United States v. Meskini*, 319 F. 3d 88, 92 (2d Cir. 2003). The Circuit's *dicta* in *Meskini* notwithstanding, there is simply no factual authority, empirical basis, study, or statistical

---

[2] Regarding the historical difference in punishment between inchoate and completed offenses, reflected as well in the Guidelines' structure, *see* Dratel Letter, at 14-21, the government, in its letter, at 14, n. 6, cites at some length the dissent(s) from the denial of *en banc* review in *United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009), *rehearing en banc denied*, 597 F.3d 514 (2d Cir. 2010), but *that is not the controlling law*. In fact, the opposite principle prevails in the Circuit as a result of the denial of rehearing *en banc*.

[3] While the government "does not oppose the Court considering the young age of the defendant at the time he committed his crimes[,]" *see* Gov't Letter, at 15, ultimately the government maintains that it should not affect the sentence: "any leniency the Court may consider should be tempered by Congress's and the Sentencing Commission's clear goals in implementing the terrorism enhancement and the evident need to incapacitate the defendant . . . to prevent him from carrying out any future terrorist acts against the United States." *Id*. Thus, from the government's perspective, the terrorism enhancement and the Guidelines are impenetrable – in essence, a mandatory Guidelines system immune from consideration of the factors enumerated in 18 U.S.C. §3553(a).

LAW OFFICES OF
**DRATEL & MYSLIWIEC, P.C.**

Hon. John Gleeson
United States District Judge
Eastern District of New York
March 1, 2012
Page 3 of 5

analysis, even a decade after *Meskini*, to support that proposition, much less to rely upon it to impose a sentence as onerous as that which the government seeks here.

In addition, in *Meskini* the Court noted that the "Guidelines are no way irrational in setting the *default* for criminal history at a very high level." *Id*., at 92 (emphasis added). Thus, even pursuant to *Meskini*, Criminal History Category VI is only the *default* level, not the answer for every defendant in every case. Indeed, *Meskini* stands for that customized analysis. *See* Dratel Letter, at 12.

The government also creates two straw men. The first is its claim, at 9, that Mr. Kaziu's position is "that the defendant's failure to murder others in pursuit of his political goals was due to lack of *culpability*." (Emphasis added). In fact, Mr. Kaziu's point is not about *culpability* (as the jury has found him guilty), but rather about *capacity* to consummate any of the four inchoate offenses charged against him. *See* Dratel Letter, at 23. Again, the government would frame the issue categorically – all or nothing, guilty or not guilty – rather than, as 18 U.S.C. §3553(a) requires, by evaluating the individual defendant's conduct and circumstances.[4]

The government's second straw man, at 11, is the claim that Mr. Kaziu seeks the same sentence as Sulejmah Hadzovic. It is not contemplated that Mr. Hadzovic and Mr. Kaziu will receive the same sentence. However, it is the *degree* of difference between those sentences that must be examined, and evaluated in the context of §3553(a)(6) in order to ensure that Mr. Kaziu's sentence does not include a component that penalizes him simply for not cooperating and/or proceeding to trial.[5]

---

[4] Similarly, in its letter, at 14, the government speculates as to what Mr. Kaziu *would have* done if not arrested, and thereby treats his offenses as if they were complete instead of addressing the precise conduct for which he was charged and convicted.

[5] In its letter, at 17, the government's contention that Mr. Kaziu's persistence in asserting he is not guilty warrants a higher sentence constitutes just another means of asking the Court to punish him for having exercised his right to trial, and now exercising his right to appeal.

LAW OFFICES OF
**DRATEL & MYSLIWIEC, P.C.**

Hon. John Gleeson
United States District Judge
Eastern District of New York
March 1, 2012
Page 4 of 5

**B. *Additional Sentences In Terrorism-Related Cases***

The following sentences have been imposed in terrorism-related cases since submission of my January 26, 2012, letter (*see* Dratel Letter, at 24-36):

- Umar Farouk Abdulmutallab was sentenced to life imprisonment after his conviction after trial for attempting to detonate an explosive device (secreted in his underwear) aboard an airplane flying to Detroit on Christmas day 2009;
- Mohammed Zazi was sentenced to 48 months' imprisonment after his conviction after trial on charges of destroying evidence and lying to law enforcement agents in connection with the government's investigation of his son, Najibullah Zazi, who has since pleaded guilty to plotting violent attacks against the U.S., including against the New York City subway system;[6] and
- Syed Hashmi was sentenced to 15 years' imprisonment after pleading guilty to providing material support to *al Qaeda* in the form of assistance to an *al Qaeda* operative in the United Kingdom (in the form of equipment and communications).[7]

In response to the catalogue of terrorism-related sentences provided in my January 26, 2012, letter, the government complains, in its letter, at 12, that the list fails to account for which defendants pleaded guilty, and which cooperated with the government. Yet in most instances, that information is provided, as well as the nature of the offense conduct at issue. Nor does the government attempt to reconcile the average sentences for terrorism-related offenses, and how and where Mr. Kaziu's offense conduct and other circumstances fit on one side or the other.

Also, the government completely misses the point of the wide range of the sentences in such cases: it demonstrates that the range, and the particular sentences within, are directly related to the conduct at issue, and that sentencing in terrorism-related cases is *not* a one-size-fits-all exercise.

---

[6] Mr. Zazi was also sentenced the same day to six months' imprisonment, to be served consecutively to the 48-month term imposed on the case described above, after his plea of guilty to a charge of visa fraud.

[7] Mr. Hashmi was sentenced in 2010, but his case was not included in my January 26, 2012, letter.

LAW OFFICES OF
**DRATEL & MYSLIWIEC, P.C.**

Hon. John Gleeson
United States District Judge
Eastern District of New York
March 1, 2012
Page 5 of 5

**C.** ***The Pre-Sentence Report's Recommendation***

The Pre-Sentence Report recommends a sentence of 30 years' imprisonment. While that recommendation correctly recognizes that a Guidelines sentence, *i.e.*, life imprisonment, would not be appropriate for Mr. Kaziu, it is respectfully submitted that the recommendation is too high because it fails to place Mr. Kaziu's offense conduct and other circumstances and characteristics within that broad spectrum of terrorism-related offenses and sentences.

Also, in concentrating primarily on general deterrence as a basis for the sentence, the PSR (as does the government, in its letter, at 16) overstates what level of deterrence would be effective in this case. Here, a sentence substantially below the Guidelines range, and/or the PSR recommendation, would provide sufficient deterrence to any person who could be deterred by the prospect of criminal penalties. The notion that a 30-year sentence would accomplish deterrence that a 20-year sentence (or even slightly lower) would not is simply not supported by any evidence – empirical, anecdotal, or otherwise.

Consequently, such a sentence would be longer than that mandated by §3553(a)'s "parsimony clause," which limits sentences to those "sufficient, but not greater than necessary" to achieve the objectives of sentencing enumerated in §3553(a)(2).

**Conclusion**

For all the reasons set forth above, and in my January 26, 2012, letter, it is respectfully submitted that Mr. Kaziu's sentence should be substantially below both the Guidelines range and the PSR's recommendation.

Respectfully submitted,

Joshua L. Dratel

JLD/

cc: Shreve Ariail
Assistant United States Attorney
(Via Electronic Mail)

# EXHIBIT 1

Dear Honorable Judge Gleason

I am writing to you to tell you a little bit about Betim Kaziu. When I was married into the family Betim was a very young boy, approximately 3 years. From all the kids I had seen during my lifetime Betim stood out to me. From a young age he was a very and thoughtful child. As he was growing up he always remained his giving and thoughtful self. Family was very important to him. Now that Betim has not been around family gatherings are not the same. Betim was always the jokster of the family. He never liked it if he saw that someone was sad or upset at gatherings. When he saw someone was like this he would always make it his mission to put at the least a smile on that persons face or at the most a rolling on the floor nose snorting laughter. He was very appreciative and very polite, he always made sure he told you he was greatful for having him over your house or come to visit his own house. This was

his true nature with family, friends and even a stranger in the street.

We were and still very sad to not have him around. Some of the younger kids in our family are even starting to forget him. My own son asks me to describe him sometimes so that he can try to remember who he was and what he was like. God willing will be able to on day be a complete family at gathering, wedding and even funerals. Thank you so much to take time and read my letter.

Sincerely

[signature]