12-1026-cr
United States v. Kaziu



UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand fourteen.

PRESENT:   REENA RAGGI,
           GERARD E. LYNCH,
           DENNY CHIN,
                    *Circuit Judges.*
----------------------------------------------------------------------
UNITED STATES OF AMERICA,
                    *Appellee*,

           v.                                        No. 12-1026-cr

BETIM KAZIU,
                    *Defendant-Appellant.*
----------------------------------------------------------------------

APPEARING FOR APPELLANT:   JULIA PAMELA HEIT, ESQ., New York, New York.

APPEARING FOR APPELLEE:    J.E. SHREVE ARIAIL (Jo Ann M. Navickas, Seth D. DuCharme, *on the brief*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York.

1

MANDATE
MANDATE ISSUED ON 06/11/2014

Appeal from a judgment of the United States District Court for the Eastern District of New York (John Gleeson, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 8, 2012, is AFFIRMED.

Defendant Betim Kaziu stands convicted after trial of attempt to provide material support to the foreign terrorist organization al-Shabaab, see 18 U.S.C. § 2339B; and of conspiracies (1) to murder in a foreign country, (2) to provide material support in furtherance of that murder conspiracy, and (3) to use a firearm in furtherance of crimes of violence, see id. §§ 924(c), (o); 956(a); 2339A.  Kaziu contends that his convictions (1) violate the First Amendment and (2) rest on insufficient evidence.  He also faults (3) the empanelment of an anonymous jury, (4) the admission of certain lay and expert testimony, and (5) the imposition of a 27-year sentence.  We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.  First Amendment Challenges

Kaziu contends that his convictions violate the First Amendment because (1) they were obtained using evidence of his extremist writings, political views, and videos he watched; and (2) the statutes under which he was convicted are overbroad.[1]  We review

---

[1] Although Kaziu argues that the statutes are overbroad as applied, this court has held that overbreadth challenges, by their nature, are facial.  See Farrell v. Burke, 449 F.3d 470, 498 (2d Cir. 2006) (Sotomayor, J.).  We thus construe Kaziu's claim as a facial overbreadth challenge.

these constitutional claims de novo. See United States v. Caronia, 703 F.3d 149, 160 (2d Cir. 2012).[2]

"The First Amendment protects against government regulation and suppression of speech on account of its content." Id. at 162–63. It does not, however, "prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993); see also Dawson v. Delaware, 503 U.S. 159, 165 (1992) (stating that "Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment").

Here, Kaziu was not convicted for his speech; rather, his political beliefs were introduced to prove the mens rea element of the charged crimes. See United States v. Coplan, 703 F.3d 46, 69 (2d Cir. 2012) (requiring proof of knowing participation in conspiracy); United States v. Farhane, 634 F.3d 127, 145 (2d Cir. 2011) (explaining that attempt requires proof of defendant's "intent to commit the object crime"). For instance, co-conspirator Sulejmah Hadzovic testified that the lectures of radical cleric Anwar Al-Awlaki to which Hadzovic and Kaziu listened eased their apprehensions about fighting jihad and encouraged their travel to the Middle East. Thus, this evidence was admitted not as inherently criminal conduct, but as proof that Kaziu knowingly and intentionally committed the charged offenses.

---

[2] Kaziu's failure to raise First Amendment objections to certain evidence warrants only plain error review, see Fed. R. Crim. P. 52(b); nevertheless, because these claims also fail de novo review, we rely on that standard throughout.

3

Further supporting our rejection of Kaziu's First Amendment challenge are the district court's repeated jury instructions that Kaziu's radical beliefs were probative only of his "mental state," Gov't App. 83, and that "[t]he defendant's not on trial for having extremist religious views or political views, and [that such evidence cannot] act as a substitute for proof beyond a reasonable doubt of the elements," id. at 170; see United States v. Salameh, 152 F.3d 88, 112 (2d Cir. 1998) (rejecting First Amendment challenge because "any prejudicial effect [that possession of terrorist materials] might have had was ameliorated by the trial court's instruction that mere possession of the literature is not illegal and that the defendants' political beliefs were not on trial"); cf. United States v. Caronia, 703 F.3d at 161 (concluding that defendant was prosecuted for speech because instructions and government's summation "left the jury to understand that Caronia's speech was itself the proscribed conduct").

Kaziu's overbreadth challenges merit little discussion.  Because he has not sufficiently articulated his overbreadth argument as to 18 U.S.C. §§ 924(c), (o), 956(a), and 2339A, we deem any challenges to those statutes abandoned.  See United States v. Botti, 711 F.3d 299, 313 (2d Cir. 2013).  Kaziu's overbreadth challenge to § 2339B, raised for the first time on appeal, warrants only plain error review, see United States v. Marcus, 560 U.S. 258, 262 (2010), and necessarily fails in light of United States v. Farhane, 634 F.3d at 138 (rejecting First Amendment overbreadth challenge to § 2339B).

4

2.   Sufficiency of the Evidence

In challenging the sufficiency of the evidence underlying his convictions, Kaziu bears a heavy burden because, although we review such claims de novo, we must view the evidence in the light most favorable to the government and affirm if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); accord United States v. Jones, 531 F.3d 163, 168 (2d Cir. 2008).

   a.   Conspiracy Convictions

Kaziu generally attacks his conspiracy convictions, asserting that the trial evidence demonstrates only that he harbored anti-American political beliefs, and did not reveal any intent to murder or to use firearms. To the contrary, Hadzovic testified in detail about his agreement with Kaziu, forged in the United States, for the men to travel to the Middle East to kill American and Somali troops, including Kaziu's intention to purchase "M-4s and M-16s and guns like that."[3]  Gov't App. 102. Further, Kaziu and Hadzovic did travel to Cairo, at Kaziu's expense, in furtherance of their plan. While overseas, the men contacted others in an attempt to travel to Pakistan, Afghanistan, and Somalia to wage jihad. This evidence was sufficient to permit a jury finding that Kaziu possessed the requisite criminal intent to be guilty of each of the three charged conspiracies.[4]  See In re Terrorist

---

[3] Kaziu does not raise, and accordingly we do not consider, any question as to whether or under what circumstances joining a foreign army or insurgency engaged in killing troops on a battlefield constitutes "murder" within the meaning of § 956(a).

[4] We likewise reject Kaziu's assertion that his conceived conspiracy to murder overseas,

Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 113 (2d Cir. 2008) (stating that to sustain conspiracy conviction, government "need not present evidence of an explicit agreement[]" (internal quotation marks omitted)).

In urging otherwise, Kaziu emphasizes that in his plea allocution, Hadzovic admitted only that he traveled to Somalia with a friend "possibly" to take up arms against the opposing army, implying that there was no true agreement to murder. Appellant's Br. 56–57. In light of other evidence, including Hadzovic's trial testimony, detailing just such agreement, however, we cannot conclude that no reasonable jury could have found Kaziu guilty as a knowing and intentional participant in the charged conspiracies. See United States v. Jones, 531 F.3d at 168.

  b.  Attempt To Provide Material Support

Kaziu challenges his conviction for attempt to provide al-Shabaab with material support, to wit, himself, see 18 U.S.C. § 2339B, on the grounds that he (1) engaged only in lawful independent advocacy, and (2) did not complete a "substantial step" toward the commission of the object offense. We are not persuaded.

First, it was not necessary for Kaziu to succeed in assisting al-Shabaab in its war against the Somali government for him to be convicted of attempting to do so. See id. § 2339B(h) (criminalizing "attempt[] to provide . . . a foreign terrorist organization with 1

---

see 18 U.S.C. § 956(a), could not constitute "material support" for purposes of § 2339A. Section 2339A explicitly provides to the contrary, see id. § 2339A(a) (criminalizing material support in carrying out "a violation of . . . [18 U.S.C.] § 956"), and Kaziu does not raise any multiplicity challenge where he and Hadzovic might be the only § 956(a) conspirators.

or more individuals (who may be or include himself) to work under that terrorist organization's direction or control"). Moreover, because the evidence showed that the object of Kaziu's attempt was to join with other al-Shabaab fighters in Somalia, his actions did not fall within the provision that insulates from criminal liability those who "act entirely independently of the foreign terrorist organization to advance its goals or objectives."  Id. § 2339B(h).

Second, the evidence of Kaziu's travels overseas with the intended object of joining al-Shabaab in its war against the Somali government was sufficient to permit the jury to find the substantial step necessary for attempt.  See United States v. Farhane, 634 F.3d at 147–49 (upholding § 2339B conviction where defendant, among other things, swore allegiance to al-Qaeda, traveled to meet purported terrorist, and promised to provide medical services for terrorist organization).

Accordingly, we reject Kaziu's challenges to the sufficiency of the evidence.

3.  Anonymous Jury

Kaziu faults the district court for empaneling an anonymous jury without conducting an evidentiary hearing.

Although anonymous juries can implicate constitutional rights, see United States v. Quinones, 511 F.3d 289, 295 (2d Cir. 2007), we have upheld their use when a district court finds "strong reason to believe the jury needs protection" and takes "reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected," United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2012).

7

Within this framework, we review the decision of the district court to empanel an anonymous jury for abuse of discretion, see United States v. Pica, 692 F.3d at 88, and we identify no such abuse here.

The first requirement was satisfied by the fact that Kaziu was charged with "serious crimes of terrorism," United States v. Kadir, 718 F.3d 115, 121 (2d Cir. 2013) (holding such charges permitted district court reasonably to conclude that "jurors would be fearful if their identities were revealed"); the government's proffer of efforts by one of Kaziu's relatives to tamper with a witness; and an online commenter's suggestion that force be used to free Kaziu from custody, see United States v. Quinones, 511 F.3d at 295 (identifying strong reasons to believe jury needed protection where government demonstrated defendant's willingness to tamper with judicial process). Nor is a different conclusion warranted because the district court did not conduct an evidentiary hearing. See United States v. Kadir, 718 F.3d at 121 ("[T]he district court has discretion to determine whether or not an evidentiary hearing is needed on the government's allegations concerning a defendant's interference with the case . . . ." (internal quotation marks omitted)).

Further, the district court took proper precautions to minimize any resulting prejudice and to safeguard Kaziu's rights. As we have previously sanctioned, the district court told jurors that their identities were being hidden only because of the extensive media coverage and did not implicate Kaziu's dangerousness. See, e.g., United States v. Paccione, 949 F.2d 1183, 1193 (2d Cir. 1991). Further, the thirty-question questionnaire provided Kaziu with a basis to conduct adequate voir dire and to probe any prospective

jurors' potential biases, including possible resentment of his anti-Semitic views. See, e.g., United States v. Pica, 692 F.3d at 88 (holding that reasonable precautions included administration of detailed questionnaire). This negates Kaziu's proffered need to know whether a venireman had a "Jewish" last name.

Thus, Kaziu's challenge to an anonymous jury fails on the merits.

4.  Lay and Expert Testimony

Kaziu also asserts that the district court abused its discretion in allowing (1) lay witness Hadzovic to testify about principles of Islam, the meaning of certain Arabic words, and the interpretation of videos he had watched with Kaziu; and (2) expert witness Evan Kohlmann to testify about how al-Shabaab and al-Qaeda distribute their propaganda through "media wings," and how outsiders' familiarity with such material facilitates their assimilation into terrorist groups. See United States v. Cuti, 720 F.3d 453, 457 (2d Cir. 2013) ("We accord a district court's evidentiary rulings deference, and reverse only for abuse of discretion."). We reject both contentions.

First, Hadzovic did not impermissibly offer expert testimony because "where a witness derives his opinion solely from insider perceptions of a conspiracy of which he was a member, he may share his perspective as to aspects of the scheme about which he has gained knowledge as a lay witness subject to [Fed. R. Evid.] 701, not as an expert subject to Rule 702." United States v. Yannotti, 541 F.3d 112, 126 (2d Cir. 2008). Hadzovic's impressions "derived from his direct participation" in the charged conspiracies, id. at 125, and aided the jury by providing background as well as evincing Kaziu's intent and actions

9

taken in furtherance of the charged conspiracies. Further, Hadzovic did not derive this testimony from specialized knowledge, but rather drew upon his conversations and experiences with Kaziu. See id. Thus, the district court acted well within its discretion in admitting Hadzovic's testimony.

Second, Evan Kohlmann was properly permitted to testify as an expert. See Fed. R. Evid. 702 (permitting opinion testimony if, among other things, expert's "specialized knowledge will help the trier of fact to understand the evidence"). Contrary to Kaziu's assertion, a lay witness could not have attested to the same issues as Kohlmann, who based his testimony on specialized research and training removed from the instant case. See United States v. Farhane, 634 F.3d at 158–59 (approving district court's admission of Kohlmann's expert testimony about jihadist videotape publisher). Moreover, the detailed instructions administered at the beginning of such testimony—without objection—accurately described the differences between, and proper uses of, fact and expert witnesses, thereby minimizing any risk that the jury misused Kohlmann's expert testimony. See United States v. Mulder, 273 F.3d 91, 102 (2d Cir. 2001) (upholding admission of expert testimony where district court instructed jury on proper use of such evidence).

Thus, we identify no error in the district court's evidentiary decisions.

5.  Sentencing Challenges

We review Kaziu's sentence for "reasonableness," "a particularly deferential form of abuse-of-discretion review" that we apply both to the procedures used to arrive at the

sentence and to the substantive length of the sentence. United States v. Cavera, 550 F.3d 180, 188 n.5 (2d Cir. 2008) (en banc); accord United States v. Broxmeyer, 699 F.3d 265, 278 (2d Cir. 2012).

    a.    Procedural Reasonableness

Kaziu charges the district court with procedural error in (1) its placement of Kaziu in Criminal History Category VI, see U.S.S.G. § 3A1.4 (requiring such classification where offense involved "federal crime of terrorism"); (2) its consideration of Kaziu's political views; and (3) its reference to Kaziu's lack of remorse. We disagree.

First, Kaziu admits that he was found guilty of a "federal crime of terrorism," id., yet contends that the enhancement is inherently unreasonable because automatic placement into the harshest Criminal History Category "diverge[s] sharply from the true facts" about him. Appellant's Br. 79. Kaziu's disagreement with the policy considerations underlying the provision does not infect the district court's Guidelines calculation with procedural error. Such concerns may support a district court's decision to impose a non-Guidelines sentence, see Kimbrough v. United States, 552 U.S. 85, 109–10 (2007), or, in the unusual case, a finding of substantive unreasonableness, see United States v. Dorvee, 616 F.3d 174, 180–84 (2d Cir. 2010) (noting "serious flaws" in U.S.S.G. § 2G2.2's enhancements for child pornography offenses in concluding sentence substantively unreasonable, but not holding Guideline inherently invalid), a point discussed in the next section. But it does not show procedural error.

Second, the district court did not punish Kaziu for his radical beliefs; rather, it considered them in assessing his continuing danger to the public. This finds support in both law and precedent. See 18 U.S.C. § 3553(a)(2)(C) (requiring district court to consider need "to protect the public from further crimes of the defendant"); United States v. Fell, 531 F.3d 197, 228 (2d Cir. 2008) (stating that government may introduce "evidence of beliefs or associational activities" if relevant "to illustrate future dangerousness").

Third, the district court properly referenced Kaziu's lack of remorse because the fact that Kaziu "did not believe that his actions rose to the level of any crime," Appellant's Br. 82, also evinced future dangerousness. See United States v. Broxmeyer, 699 F.3d at 295 (stating that defendant's "lack of remorse for, or even appreciation of, the seriousness of the totality of his conduct . . . further expand[s] the range of substantively reasonable sentences to allow the district court to afford adequate specific deterrence and protection of the public").

b. Substantive Reasonableness

Kaziu asserts that his 27-year sentence, a downward departure from the Guidelines' recommendation of life in prison, was substantively unreasonable because his crimes "were essentially ones of evil thought" that did not cause tangible harm. Appellant's Br. 83. Kaziu bears a heavy burden because we will set aside a sentence as substantively unreasonable only in exceptional cases where the trial court's decision "cannot be located within the range of permissible decisions." United States v. Cavera, 550 F.3d at 189 (internal quotation marks omitted). That is not this case.

Kaziu was convicted of agreeing and attempting to aid terrorist organizations by killing United States and Somali troops, extremely serious crimes. See 18 U.S.C. § 3553(a)(1) (requiring sentencing court to consider "nature and circumstances of the offense"). That Kaziu did not achieve his murderous objectives—instead, according to the district court, coming "pretty close" to them, Gov't App. 230—does not render his below-Guidelines sentence unreasonable as a matter of law. See United States v. Jones, 531 F.3d at 174 (stating that "reviewing court will set aside only those outlier sentences that reflect actual abuse of a district court's considerable sentencing discretion").

In urging otherwise, Kaziu contends that his sentence is disproportionately higher than those imposed on other similarly situated defendants. See 18 U.S.C. § 3553(a)(6). But Kaziu fails meaningfully to compare the facts of those cases to his own. Many of the defendants Kaziu asserts received more lenient sentences either pleaded guilty or did receive comparable punishments of more than 20 years in prison for material support of a terrorist organization. See United States v. Fernandez, 443 F.3d 19, 32 (2d Cir. 2006) (rejecting disparity challenge where no showing that defendants were "similarly situated"). Thus, we cannot conclude that the district court failed to award sufficient weight to this sentencing factor. See United States v. Coppola, 671 F.3d 220, 254 (2d Cir. 2012) (stating that § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and that assigned weight is "firmly committed to the discretion of the sentencing judge" (internal quotation marks omitted)).

Thus, we reject Kaziu's challenges to the reasonableness of his sentence.

We have considered Kaziu's remaining arguments and conclude that they are without merit. We therefore AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit