# STANLEY L. COHEN

ATTORNEY AT LAW

79 Blackberry Lake Road
P.O. Box 629
Jeffersonville, NY 12748
(845) 482-4562
(917) 544+5471

The Honorable Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

April 2, 2021

Re: *United States v. Betim Kaziu*
Criminal Docket No. 09-660 (FB)

Dear Judge Block:

For nearly 2 years the government has insisted that Betim Kaziu must be resentenced in a plenary, in-person de novo hearing:

> "Kaziu's conviction on Count Four should be vacated, and Kaziu should be resentenced in a full resentencing on Counts One, Two and Three . . .
>
> Kaziu's conviction on Count Four must be vacated and the case remanded for a full resentencing on the remaining counts. See United States v. Powers, 842 F.3d 177, 179 (2d Cir. 2016) (explaining that remedy for conviction error is remanding for de novo resentencing). . .
>
> Kaziu's conviction on Count Four of the Superseding Indictment must be vacated and Kaziu should be resentenced in a full resentencing on Counts One, Two and Three." (emphasis provided).[1]

Throughout this time, the government has fought tenaciously to counter and rebut defense counsel's arguments that Mr. Kaziu is worthy of a lesser sentence at a de novo hearing. Expert testimony, numerous exhibits, disputed facts and legal argument have been submitted to the Court to bolster the government's position.

As late as January, 2021, the government not only insisted once again on a resentencing hearing, it rejected the suggestion that the hearing be conducted via telephone conference, claiming "felony sentencing proceedings must take place in person."[2] An in-person resentencing hearing was so important to the government it forcefully argued against any application of the Coronavirus Aid, Relief, and

---

[1] Govt. Response to §2255 Motion (Dkt. No. 289) Oct. 15, 2019.
[2] Govt. request to continue sentencing by (Dkt. No. 304)(FB) January 11, 2021.

STANLEY L.COHEN

Economic Security Act ("CARES Act") to allow for a hearing by video conference. The Court was persuaded that a hearing, physically attended by Mr. Kaziu, was required and continued his sentencing for several months not long after the Government's argument and application.[3]

Now, finally, as time draws near for the very resentencing hearing the government has long insisted upon, there is a sudden change of heart, a reversal of strategy. Now, after legal arguments have been made, witnesses prepped, debate framed, facts contested the government suddenly and inexplicably claims that no hearing is necessary after all.[4]

What could possibly account for this eleventh hour 180 degree turn? What dramatic shift in the law or the facts and circumstances of the case has occurred to justify this whiplash-inducing shift? Has Count Four been reinstated? Has Congress changed the controlling statute? Has the Supreme Court or the Second Circuit created new precedent? Has the Sentencing Commission weighed in and altered applicable guidelines? No. The government rests its new argument on three non-binding, ill-conceived rulings which are, in any event, wholly inapposite to the case at bar.

The rationale of the three cases cited by the government is best summed up by Judge Kaplan in *Ayyad v. United States,* 16-CV-4346 (LAK):

> "The *Quintieri* default rule is inapplicable here. As the Circuit has explained, that rule applies to instances where "*the conviction on one or more charges is overturned on appeal and the case is remanded for resentencing.*" Movant does not cite, nor is the Court aware of, any case in which the *Quintieri* default rule has been applied in the habeas context. The nature of habeas petitions demonstrates why this is so. A final judgment may be attacked collaterally pursuant to §2255 only in narrow circumstances. The limited availability of §2255 reflects an interest in the finality of a criminal judgment, an interest that is not present on a direct appeal."*id.*at p.5.

As will be discussed below, Judge Kaplan is wrong on the law. The differences between conviction errors corrected by direct appeal and those

---

[3] Order granting request to continue sentencing (Dkt. No 305)(FB) January 11,2021.
[4] On the basis of the government's memorandum, counsel is uncertain whether it is arguing the court has no discretion should it uphold count one and must, as a matter of law, affirm its original 27 year sentence with mere rote application, or that there is no need for defendant's in-person presence and argument as the court considers opposing legal contentions and weighs and balances the various 3553 factors in reaching a reasonable de novo sentence for counts 1-3. Given the government's submission in which it sets forth its view of the facts and their nexus to various 3553 concerns, and provides an expert declaration conflicting with one submitted by the defendant, it would appear the government does not see the court limited in its sentence discretion, but rather prefers its imposition in form, from afar, and not in substance, in-person.

STANLEY L.COHEN

corrected upon collateral attack do not change the reasons underlying the *de novo* sentencing rule. To the extent Judge Kaplan's decision can be read to be predicated on judicial workload and convenience, it must be doubly rejected.[5] In this regard, a second decision relied on by the government is also suspect. In *United States v. Medunjanin*, 10-CR-0019 (BMC) Judge Cogan refused to conduct a de novo hearing stating:

> "The academic nature of the resentencing combined with the special challenges of bringing defendant- currently held at a "supermax" facility and subject to stringent Special Administrative Measures- before this Court, lead me to conclude that a de novo resentencing is not warranted in this case." *id*. at p.17.

Perhaps, the judicial workload and convenience justifications ought best to be regarded as mere makeweight. Certainly, they can have no bearing on whether Mr. Kaziu is entitled to a de novo sentencing hearing.

Be that as it may, both *Ayyad* and *Medunjanin* are so fundamentally different, <u>on the math</u>, as to have little application to this case. As both Judge Kaplan and Judge Cogan went to great lengths to point out, even if the respective defendant was wildly successful in lowering his sentence after an in-person de novo hearing, he would still be subjected to a term of life plus a number of years. For example, Judge Cogan stated in *Medunjanin*:

> "I decline to conduct a de novo resentencing here because the resentencing is entirely academic. Defendant was sentenced to 65 years' custody to run concurrently on all underlying crimes, 30 years' custody to run consecutive on the first §924 (c) conviction for Count Nine, and life to run consecutive on the second §924 (c) conviction for Count Eleven, for a total of life plus 95 years. Even after vacating Count Nine, the remaining §924 (c) conviction has a required minimum of 30 years to run consecutive to the underlying counts because the offense involved the use of a destructive device."*Medunjanin* at p.17.

Likewise, Judge Kaplan opined in *Ayyad*:

> "the strong likelihood is that the movant's argument in favor of a de novo resentencing is entirely academic. On any resentencing he would have to be sentenced to 360 months imprisonment on Count 9, to be served consecutive to any sentence imposed on the other counts. He is 53 years old. In order for a de novo resentencing to have any real world effect- that is, to give him any real chance of release prior to his passing- the Court would have to impose concurrent

---

[5] "A default rule requiring that the district court hold a de novo sentencing <u>each and every time</u> a defendant successfully challenges at least one count of a multi-count conviction would be in tension with the narrow scope of §2255."(emphasis provided). *Ayyad* at p. 5.

**STANLEY L.COHEN**

sentences of 27 years or less on Counts 1-6 and 8. The probability of such a sentence on Counts 1-6 and 8 … is sufficiently slim as to make a de novo resentencing an unwise exercise of this Court's discretion." *Ayyad* at p.7.

In contrast stands the defendant. Betim Kaziu is still a young man who will leave prison someday, with hopefully a long-life expectancy. Simple rehabilitative justice requires that he be afforded an opportunity to argue, and as the government has previously urged, in-person that his return to society should come sooner than his original, now invalidated sentence would otherwise allow.

The government now claims for the first time that because Count Four was vacated not on direct appeal but by way of collateral attack, pursuant to 28 U.S.C. §2255, a de novo resentencing is not required. Given the posture of this case, the government's argument is, at best, opaque. Either the government is arguing that the record created and the arguments advanced in this case over the last two years can and should be ignored by the Court; or, all of those arguments and evidence can be considered by the Court- but only on the papers and not in an in-person hearing. Essentially, the government appears to argue that this case presents the Court with a math problem.[6] Just do the math, the government describes it as a ministerial act, and there is no reason to waste the Court's time on any other considerations. The government's position would be amusing if it weren't so cynical. Mr. Kaziu is entitled to be resentenced de novo. The Guidelines require it, federal statute requires it, the binding precedent of the Second Circuit requires it and simple notions of fairness and justice require it.

The Second Circuit has made clear that conviction errors, as opposed to sentencing errors, require resentencing de novo. "[W]hen a resentencing results from a vacature of a conviction, we in effect adhere to the de novo default rule… because multiple convictions are "inextricably linked in calculating the sentencing range under the guidelines."*United States v. Quintieri*, 306 F3d 1217, 1228 (2d Cir. 2002). When the application of the default rule was challenged in later cases, the Second Circuit stood firm, rebuking the lower courts for limiting its holding in *Quintieri*. For example, in *United States v. Rigas*, 583 F3d 108, the Second Circuit reversed the District Court stating, "In Quintieri, we created a rule, not a guideline. To the extent that any language in *Quintieri* or cases that pre-date *Quintieri* suggest

---

[6] The government's formulaic proposition may be reductive but at least it involves only introductory grade math. Because Mr. Kaziu was sentenced to 27 years on each of Count 1 and Count 4 to run concurrently, the Court must, the government contends, simply vacate the 27-year sentence on Count 4 and leave the 27 year sentence on Count One in place, thus leaving the aggregate sentence undisturbed. Of course, if the Court agrees with defense that Count One must also be vacated along with Count Four, there is no question that the original 27-year sentence on either count would have no basis.

4

otherwise [citations deleted], we resolve any ambiguity today." *id.* at 117. Yet again, the rule was challenged by a District Court in 2016. In *United States v. Powers*, 842 F3d 177 (2d Cir. 2016), the District Court refused to conduct a de novo review claiming much like the Government does here that re-sentencing was a mere 'ministerial act'. Yet again, the Second Circuit reiterated forcefully that the only exception to the de novo rule was if the defendant were serving a mandatory minimum sentence on a surviving count. That was not the case in *Powers* and the case was remanded for the required review. *Powers* at p.179. There is no mandatory minimum at play in this case and de novo review is therefore required.

It is important to point out that in *Quintieri* and *Rigas* and in virtually all of the cases applying the de novo hearing mandate, it is the government's position that the aggregate sentence must be examined de novo whenever it seeks to <u>increase</u> the sentence on remaining counts. In this case, because a lower sentence is sought by the defense, the government now argues the resentencing court is not obliged to consider the aggregate sentence.

The double standard of the government's position is best highlighted by a review of *United States v. Gordils*, 117F3d 99 (2d Cir. 1997). *Gordils* presented a classic drug and firearm fact pattern. After a jury trial, Gordils was convicted of multiple drug trafficking offenses and using a firearm during the commission of the drug crimes in violation of 18 U.S.C. §924 (c). Gordils was sentenced to three concurrent 151-month terms on his drug crimes and a mandatory consecutive five-year term on the §924 (c) conviction. Because of the §924 conviction, Gordils' sentences on the drug convictions could not be enhanced by two levels for possession of a firearm.

Gordils' conviction and sentences were affirmed on appeal. *United States v. Gordils*, 982 F.2d 64 (2d Cir. 1992). After the appeal was decided, the Supreme Court limited the scope of §924 (c), effectively overruling the Second Circuit's holdings that active use was not required to sustain a conviction under §924 (c). *Bailey v. United States*, __U.S.____, 116 S. Ct. 501 (1995). Thereafter, Gordils filed a §2255 petition to vacate his §924 (c) conviction. The government did not oppose the application but instead moved for a de novo resentencing, arguing that on resentence the court must apply the firearm enhancement to <u>increase</u> Gordils' sentence on the drug convictions.

Defense counsel maintained that the resentencing court lacked jurisdiction to increase Gordils' sentences on the long since final narcotics judgments. The government argued that §2255 itself authorizes the resentencing court to "vacate, set aside or correct the sentence." Specifically, in response to the defense's contention that only the individual sentence of the vacated count could be modified, the government countered that the word "sentence" in §2255 refers to the entire sentence, not just its component parts. Finally, the defense argued that

5

the aggregate sentence could be reopened if the 924 conviction were vacated on direct appeal but because the 924 (c) count was vacated on collateral review, such review is limited.

The Second Circuit joined virtually every other Circuit and held for the government stating "we see no compelling reason why the legal interdependence of sentences under the guidelines should not as surely lead us to reconsider related sentences in the context of collateral attacks as it does in the context of a direct appeal." 117 F3d at 103.[7]

Given the clarity and settled nature of the rule, it is little wonder that the government long recognized its application to this case- until now. The nature of the error has not changed. The government does not contend, nor could it, that the vacatur of Count Four was anything but a classic conviction error. So, if the predicate is established and no exception applies, how is it that the de novo resentencing rule does not apply to Mr. Kaziu? The difference according to the government is how the issue is before the Court. The Second Circuit precedent was created in cases on direct appeal and because this case is not a direct appeal, but a collateral attack, that precedent does not apply. Why that should be the case is not fully formed in the government's argument. To be sure, there are differences between direct appeals and collateral attack. (*See* generally, 28 U.S.C. §2244-Finality of Determination). "The principle that collateral review is different from direct review resounds throughout our habeas jurisprudence." *Brecht v. Abrahamson,* 507 United States 619, 633, 133 S. Ct. 1710, 1719 (1993). "An error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982). The essential difference between direct appeal and collateral attack is not the crime or remaining sentences, it is the procedural posture in which the case is before the Court. But the Second Circuit has specifically held that those differences do not undermine the reasons for a de novo resentencing.

Although expressed in various forms, a time worn view exists that the "narrow scope" of a collateral challenge and the sanctity of "finality of judgments" means that the aggregate sentence of a multi-count conviction need not necessarily be considered nor disturbed when one of the counts has been vacated.

The "narrow scope" limitation appears to refer to the jurisdiction of the resentencing court. The premise of the narrow scope is that the court has

---

[7]Curiously, in one of the decisions the government has cited to justify its argument against de novo review, the District Court stated " Movant does not cite, nor is the Court aware of, any case in which the Quintieri default rule has been applied in the habeas context" *United States v. Ayyad* (16-CV-4346), p.4. Not only was the de novo rule applied in *Gordils*, a collateral attack case, the very distinction used to justify no de novo review in collateral attack cases was specifically rejected.

jurisdiction only over the challenged count before it and no authority to consider those other counts and sentences that remain. The fundamental problem with this lingering argument is that it has been soundly rejected by the Second Circuit in *Gordils*. Let there be any doubt, the authority found in §2255 to modify the sentence refers not just to the sentence associated with the challenged count, but to the aggregate sentence. The "narrow scope" argument is but old wine in a new bottle and it does not limit the resentencing court's authority or responsibility to consider the aggregate sentence.

The government alludes to, but doesn't push too hard on, the "finality of judgment" argument to support its claim that a de novo hearing is not required or necessary. To be sure, this concept has been used to limit successive collateral attacks. But the government has been on the other side of this argument for years. Cases, like *Gordils*, are legion where defense counsel has argued that the finality of judgment rule precludes reopening the aggregate sentence to increase the sentence on the remaining charges. The government has successfully argued in those cases that a plain reading of §2255 provides the resentencing court with ample authority to reopen the aggregate sentence; the finality of judgments be damned.

The de novo resentencing rule is predicated on the idea that in most cases, the sentence in a multi-count conviction, even if expressed as terms for each count running consecutively or concurrently, reflects the sentencing court's judgment on the totality of the circumstances. The relationship of counts in a multi-count conviction has been variously described as "inextricably linked" or "an intricate knot of calculation" or "interdependent" *United States v. Powers*, 842 F3d 177, 179 (2d Cir. 2016). However described, the concept is clear- the aggregate sentence for a multi-count conviction is not simple math. Each count contributes to the aggregate sentence and when one of the counts is removed the aggregate sentence can and must be reexamined in a de novo review. In this case, if Count Four were never part of the sentence, would Judge Gleeson have given 27 years on Count One? The Government argues vehemently that is the case, but it is a wishful think, impossible to know. That is why a de novo resentencing is required. And it makes not one whit of difference what procedural device was employed to excise Count Four from the case. The interdependence remains.

It is hard to know what the government is trying to avoid by arguing that Mr. Kaziu is not entitled to a de novo hearing. Maybe it is simply a matter of the allocation of prosecutorial resources, although given the fact that those resources have already been expended in this case, that motivation seems unlikely. Maybe it is the flood gate concern or maybe judicial convenience. Both of these issues are hinted at in the District Court cases the Government cites.

Just as likely, maybe more so, the government is trying to avoid the full examination of the §3553 factors which would entitle Mr. Kaziu to a lesser

STANLEY L. COHEN

sentence. There can be no doubt that the resentencing court must consider Mr. Kaziu as he stands before the Court presently. The Second Circuit resolved this issue over twenty years ago in *United States v. Core*, 125 F3d 74 (2d Cir. 1997) wherein it rejected the government's argument that although a resentencing court had authority to increase a sentence on remand, that same court lacked authority to downwardly depart from the original sentence based on post-conviction rehabilitation during incarceration. The Court held, "We find nothing in the pertinent statutes or the Sentencing Guidelines that prevents a sentencing judge from considering post-conviction rehabilitation in prison as a basis for departure if resentencing becomes necessary." *id.* at 75. And further, "When the trial court undertook to resentence Reyes after vacating his §924 (c) conviction, it was required to consider him as he stood before the court at the time." *id.* at 77.[8]

The government contends no hearing is required because nothing has changed. How will the Court know that unless there is a hearing? Mr. Kaziu has journeyed far over the life of this case- from a lost teenager to a fully developed man. Should not that journey be taken into account as he is resentenced?

The purpose of a de novo sentence hearing in this case is to determine if the sentence imposed over 12 years ago when Count Four was improperly included in the multi-count conviction is reasonable and appropriate under the circumstances present today. In a breathtaking leap of reductive reasoning, the government argues that because the original sentence of 27 years on Count One (may) remain appropriate, there is no need for a de novo review. Though laudable in its reach,

---

[8] Although, at one point, courts in the Second Circuit were unable to consider post-conviction rehabilitation in prison as the basis for departure where a defendant was being resentenced for the "same offense" (*see Quesada-Mosquera v. United States*, 243 F.3d 685,686 (2d. Cir. 2001), it could not, in any event, apply to the facts of this case where Mr. Kaziu's resentence is for a different course of conduct and offenses than those for which he was originally sentenced. Under these circumstances the reasoning of *United States v. Core*, 125 F.3d 74, 75 (2d Cir. 1997)(post-conviction rehabilitation in prison may be considered in resentence pursuant to successful §2255 motion) remained undisturbed. *See, also, United States v. Bartz*, 2006 U.S. Dist. LEXIS 46395(D.Vt. 2006)(Murtha, J.)("post-offense rehabilitation has only been considered when a defendant is being re-sentenced for a reason that is independent of the rehabilitation."); *United States v. Lillard*, 2006 U.S.LEXIS 5944(N.D.N.Y. 2006(McAvoy,J.) ("under 3582(c) ... 'post-sentence rehabilitation is not *by itself* a ground for modifying a sentence that has been lawfully imposed.")(emphasis provided)(internal citations omitted).

However any question about the need for a nuanced application of post-incarceration rehabilitation in the resentence calculus was ultimately put to rest by *Pepper v. United States*, 562 U.S. 476 (2011)(categorical bar on consideration of post-sentencing rehabilitation evidence contravenes 18 U.S.C.S. § 3661 and the Sixth Amendment. Such evidence is relevant to several of the 18 U.S.C.S. § 3553(a) factors).

8

STANLEY L.COHEN

this argument finds no repose in settled law. Let us lay the facts before the Court and argue about those that are in contention, in person. The Court should not and cannot determine a reasonable sentence without a full de novo resentencing.

As the government has so aptly argued, just two months ago, resentencing requires an in-person hearing. Deciding the matter "on the papers" is not permissible.[9]

Respectfully submitted,

Stanley L. Cohen, Esq.
Co-counsel

Geoffrey St Andrew Stewart, Esq.
Co-counsel

cc: Clerk of the Court (FB) (by ECF)
    Counsel of record (by ECF and E-Mail)

---

[9] Gov. Response to CARES Act petition (Dkt. No. 304) (FB), January 11, 2021.