# EXHIBIT

# A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA

          v.

BETIM KAZIU

          Defendant.
-------------------------------------------------------X

Docket No. 09-CR-660

## DECLARATION

I, Yasir Qadhi, under penalty of perjury pursuant to 28 U.S.C. §1746, hereby declare as follows:

1. This declaration serves as a supplement to my initial declaration which was submitted to the Court on or about March 18, 2020 and is submitted in reply to the declaration of Dr. Lorenzo Vidino.[1]

2. I have reviewed the credentials and declaration of Dr. Lorenzo. Though he presents the Court an impressive academic and scholarly body of work indeed, from a practical, relevant, and cognitive standpoint, it falls well short of that necessary to weigh in on what the future may or may not hold for Betim Kaziu.

3. Thus, what is markedly absent from Dr. Vidino's CV is any consequential experience with significant numbers of young men and women and their families of the Islamic faith and tradition. This holds particularly true for those in the throes of personal crises because of events world-wide that have swept tens of millions of Muslims into the eyes of a terrible storm of victimization, displacement, refugees in flight and, for some, mindless un-Islamic extremism.

4. Likewise, Dr. Vidino's failure to speak, let alone understand, Arabic, Farsi, Urdu and other languages of the region leaves him at a marked disadvantage, dependent solely on the interpretation of others (and not his own working understanding) as to the recorded underpinnings of Islam, with its nuanced interpretation, application and meaning. This shortcoming is exacerbated by his palpable lack of any significant experience in the MENA region where he has spent little if any time on the ground and is certainly detached from its diverse culture and communities.

---

[1] Inexplicably, although I executed the signature page on my original declaration it apparently did not accompany my submission to the Court, which remains unsigned and unexecuted. I herewith swear under penalty of perjury that the original declaration, with the narrative and opinions contained therein reflect my observations, thoughts and conclusions.

5. So, too, not a credentialed therapist, psychologist or Islamic trained scholar or counselor, Dr. Vidino is simply not positioned to render any opinion of objective, meaningful consequence with regard to any young Muslim man or women experiencing confusion or crises in their life or whether that chaos leaves them either vulnerable to extremist propaganda and lure or, with time and growth, is beyond its reach.

6. Most important, Dr. Vidino has not spent any time, ever, with Betim Kaziu. He knows not at all what he thinks or feels now about his faith and conduct of long ago; what he did or why at the time when he was arrested when barely out of his teens; or, in reflection, his evolving thoughts about it over the many years since. Surely, a simple, informed exchange between an expert on so-called "risk assessment" and the subject at hand compels a face to face meeting between the two, with unrestrained questions and answers, time to listen, observe, probe, and follow-up.[2] Yet that essential exchange is markedly absent here where Dr. Vidino's conclusion (or non-conclusion) is built entirely from a body of abstract and stereotypical group dynamic and little else.

7. What is most interesting about the Vidino declaration is not that it takes issue with my ultimate conclusion, namely that Mr. Kaziu presents a mature, evolved and calm individual who sees the folly of his misinformed beliefs and conduct of years ago and presents no current telltale sign of relapse or danger to society, but that it challenges aspects of my declaration based on little more than abstract, quasi-empirical grounds or mere supposition.

8. Thus, it was not my intention to convey to the Court that each and every Muslim victimized by the trap of extremism is entirely unschooled or trained in the scholarship of Islam. There are, of course, documented examples of young men and women steeped in Islamic learning who nonetheless go off on an ignorant tangent in search of "jihad" as so much a misplaced obligatory tenet of faith. These are fools. Those who may, from memory, recite complete passages from the Quran and related texts verbatim, but yet miss or misconstrue their meaning, and the application of their message.

9. Nevertheless based upon decades of work directly with young Muslims entertaining a moment of crises about who and what they are, the call of Islam and what is required of them, the vast majority of those contemplating going off on jihad, or who have, are lost; unschooled, untrained and entirely unfamiliar with what is intended for and required of a righteous Muslim. Like so many others hypnotized by the rhetoric and "excitement" of the moment, Betim Kaziu went off, not knowing what he was doing, where he was going and, ultimately, why.

10. Likewise, my reference to Egypt traditionally being a center for the study of Islam and the Arabic language and not a typical stop-over or meeting place for Muslims bent on joining extremist groups with whom they have no connection, was not intended to convey to the Court that no such ill-informed and dangerous strategy or result ever occurs. Of

---

[2] Unlike me, it appears that Dr. Vidino did not review any material, records or submissions related to the facts and circumstances of this matter before submitting his opinion.

course Egypt, like elsewhere in MENA,[3] has at times been a bridge for foreign extremists to meet in a pre-arranged journey to continue on to join designated terrorist groups elsewhere. Yet based upon my experience and knowledge gleaned from decades of work that is and has long been the exception. In sum, for every young person who travels to Egypt as part of a pre-arranged "jihadi" strategy to connect with others of a like mind and purpose, far more do so in pursuit of religious growth or arrive in Cairo lost, looking for an extremist purpose or road about which they have no idea and which invariably leads to a hasty ill-informed move elsewhere. Betim Kaziu was one such hapless drifter.

11. Finally, I dispatch with little necessary comment, Dr. Vidino's final criticism of my evaluation, namely his suggestion, no claim, that I was manipulated by Mr. Kaziu's answer to me about his current view on jihad. Under Dr. Vidino's gratuitous theory, Mr. Kaziu told me what he knew, in advance, I wished to hear and not what he really felt in order to curry a favorable assessment. Obviously, like all experts in a given discipline, I have at times been mistaken as to my conclusion on a given point. Yet, I would never be so brazen or irresponsible as to comment on the demeanor of one who I was not present to observe, or the credibility of participant in a particular exchange which I was neither party to or witness of. If Mr. Kaziu, locked in a jail cell for many years, was as intelligent as to presciently foreshadow my difficult questions, and then as talented as to act out an almost Emmy-award-worthy scene of genuine contemplation, then Mr. Kaziu is infinitely more talented than anyone has yet discovered. Yet, that is precisely what Dr. Vidino does with his anxious rewrite of a conversation that he has no firsthand knowledge of, involving parties with whom he has never spoken.

12. I prepared myself for my face-to-face meeting with Mr. Kaziu through several discussions with his counsel and by review of various relevant materials related to his arrest and prosecution. Our discussion, which lasted several hours, was wide reaching and covered a full range of topics including what he did years ago and why, his life behind bars, his knowledge, understanding and practice of Islam today, and his aspirations and hope for the future. I found Mr. Kaziu to be earnest and honest in his answers throughout our conversation. He struck me as peaceful, repentant and truly ashamed of what he had done, acknowledging that he had caused great harm not just to himself and to his family but to the broader Muslim community. I left our meeting convinced that Mr. Kaziu has rejected in its entirety the false beliefs and outlook that long ago had driven him down a dangerous and potentially destructive path. What struck me the most was his intense guilt as a son for having let his parents down, and his earnest desire to make up to all of the psychological and financial harms his family had incurred for him. That guilt was conveyed without my prompting and was a salient feature for me. And though he will need the support of family, friends and community upon his ultimate release from prison to assist in his reintegration into society, I firmly believe he will do so and poses no threat to it during that process.

13. In conclusion, while faith can be a great balm for all in what is surely a difficult, at times, overwhelming journey of uncertainty, temptation and pain, it can when in the wrong hands exacerbate and exploit that anguish. Nowhere is that more certain than among our young who can be particularly vulnerable to the enticement of rhetoric and propaganda and charismatic speech. That corruption knows no particular faith and can, unfortunately,

---

[3] Referring to the Middle East-North Africa region.

spread with ease among each of the world's great age-old religions. If reports are true, recently hundreds of young Christians engaged in acts of domestic terrorism by participating in a deadly attack on the Capital, the citadel of our democracy. Like their Muslim counterparts, it is obvious they were drawn into this extremism not of their own informed volition, but through an orchestrated effort of others armed with the effective charismatic appeal of distortion, lies and anger. Twelve year ago a young Betim Kaziu was a Muslim victim of an earlier time, an earlier rage, an earlier mislead and for it has paid dearly. I believe he is ready to become a peaceful, productive member of our community, a diverse community of many faiths and many dreams.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Plano, TX, on 5th day of April, 2021