UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES,

     Plaintiff,

 -against-

BETIM KAZIU,

     Defendants.
------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1:09-cv-00660-FB-1

*Appearances:*
*For the Plaintiff*:
MARK J. LESKO
Acting United States Attorney
Eastern District of New York
By: ROBERT POLLACK
GILLIAN KASSNER
Assistant United States Attorneys
271 Cadman Plaza East
Brooklyn, NY 11201

*For the Defendant*:
STANLEY L. COHEN
79 Blackberry Lane Road
P.O. Box 629
Jeffersonville, NY 12748

GEOFFREY ST. ANDREW STEWART
139 Fulton Street, Suite 508
New York, NY 10038

**BLOCK, Senior District Judge:**

  On July 7, 2011, a jury found Betim Kaziu ("Kaziu") guilty of Conspiracy to Commit Murder in a Foreign Country, Conspiracy to Provide Material Support to Terrorists, Attempt to Provide Material Support to a Foreign Terrorist Organization, and Conspiracy to Use a Firearm. Kaziu grew up in Brooklyn, New York but traveled abroad with the aim of waging jihad. Although Kaziu did not successfully engage in acts of violence, he filmed a martyrdom video and made substantial efforts

1

to join foreign terrorist organizations with the goal of harming American or allied troops.

On April 14, 2019, Kaziu filed a petition for habeas corpus relief under 28 U.S.C. § 2255. Kaziu's motion is granted in part and denied in part. Upon reconsideration of the 18 U.S.C. § 3553(a) sentencing factors, the Court has decided to modestly reduce the petitioner's sentence to twenty-five years imprisonment, followed by lifetime supervision.

## I.

When he was twenty-years old, Betim Kaziu and his childhood friend and co-conspirator Sulejmah Hadzovic developed a growing interest in radical Islam and sought to travel abroad in the hope of joining a Jihadist group. Eventually Kaziu and Hadzovic traveled to Egypt, where they enrolled in Arabic classes and searched for people who could introduce them to foreign fighters.

Six months after arriving in Egypt, Hadzovic appeared to have experienced a change of heart and left Egypt. Hadzovic traveled to the Balkans to stay with family on his way back to the United States. Kaziu tried to persuade Hadzovic to join an attack on American troops serving as NATO peacekeepers in the Balkans. On July 21, 2009, Kaziu traveled from Egypt to Kosovo, where he discussed plans to travel to Pakistan to join Al-Qaeda or the Taliban, then to Pakistan or Afghanistan to fight United States forces. Soon thereafter, having received

information from U.S. authorities, police in Kosovo raided the apartment where Kaziu was staying. Inside, they found an AK-47, ammunition, hand grenades, a shotgun brochure, and the petitioner's camera, which contained a martyrdom video that spoke of Kaziu's imminent plans to depart to paradise in the afterlife.[1] When Kaziu's laptop was recovered at a different location, authorities found materials confirming Kaziu's intent to join a foreign terrorist organization and to fight and kill U.S. troops. This included inculpatory emails and a poem in which Kaziu declared his desire to die as a martyr for Islam.

On September 24, 2009, Kaziu was indicted in the Eastern District of New York and arraigned on charges of Conspiracy to Commit Murder in a Foreign Country, in violation of 18 U.S.C. § 956, and Conspiracy to Provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A. On May 20, 2011 a grand jury returned a superseding indictment, charging Kaziu with two additional counts, Attempted Material Support for a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B, and Conspiracy to Use a Firearm, in violation of 18 U.S.C. § 924(o) and § 924(c)(1)(B)(ii). The case proceeded to a jury trial that commenced on June 27, 2011. On July 7, 2011, Kaziu was convicted of all counts. Judge John

---

[1] The government has conceded that it cannot prove possession of the AK-47, ammunition, and hand grenades by a preponderance of evidence. See ECF No. 289 at 3.

3

Gleeson sentenced Kaziu to twenty-seven years in prison, followed by lifetime supervision.

## II.

Both parties agree that Kaziu's conviction as to Count Four, Conspiracy to Use a Firearm, in violation of 18 U.S.C. § 924(o) and § 924(c)(1)(B)(ii), should be vacated. Kaziu's conviction on this count is premised on crimes of violence that satisfy only the "residual clause" of 18 U.S.C. § 924(c), which the Supreme Court invalidated as unconstitutionally vague in *United States v. Davis*, ___ U.S. ___, 139 S. Ct. 2319 (2019). The Court therefore vacates Kaziu's conviction as to Count Four.

## III.

The parties dispute whether vacatur and resentencing are required as to Count One, Conspiracy to Commit Murder in a Foreign Country, in violation of 18 U.S.C. § 956(a).

Kaziu contends that Count One "does not pass the categorical test" because "in the force clause context" the categorical method requires "asking whether the least culpable conduct covered by the statute at issue nevertheless 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" ECF No. 283 at 10. Kaziu contends, therefore, that "the statute is too broad to qualify as a 'violent felony.'" *Id*.

4

To the extent that Kaziu is attempting to tie his conviction under 18 U.S.C. § 956(a) to *United States v. Davis*, __ U.S. __, 139 S.Ct. 2319 (2019), and its predecessor cases – *Johnson v. United States*, 576 U.S. 591 (2015) and *Sessions v. Dimaya*, __ U.S. __, 138 S. Ct. 1204 (2018) – his argument fails. Section 956(a) does not require the government to prove that Kaziu committed an act of violence, nor does it have any of the constitutionally defective language relating to a crime of violence element or a residual clause. *Cf. United States v. Nikolla*, 950 F.3d 51, 53 n.4 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 634 (2020) (declining to apply *Davis* where the count of conviction was unrelated to § 924(c)).

## IV.

The Court has chosen to proceed with re-sentencing based on the parties' detailed written submissions. Generally, when a count of conviction is vacated, the default rule is to engage in *de novo* re-sentencing. *See United States v. Powers*, 842 F.3d 177, 179 (2d Cir. 2016) ("the 'default rule' to remedy a so-called 'conviction error'—as distinct from a so-called 'sentencing error'—is de novo resentencing").

Nevertheless, there is growing awareness that a full resentencing proceeding is not always necessary after vacatur of a conviction stemming from a § 2255 petition. *See United States v. Pena*, No. 09-CR-341, 2020 WL 7408992, at *6 (S.D.N.Y. Dec. 17, 2020) (vacating conviction and sentence for three § 924(c) and (j) offenses, but denying request for resentencing and leaving undisturbed the

5

sentences on remaining counts of conviction); *United States v. Medunjanin*, No. 10-CR-0019, 2020 WL 5912323, at *8 (E.D.N.Y. Oct. 6, 2020) (vacating conviction and sentence for one § 924(c) offense, but denying request for resentencing and leaving undisturbed the sentences on remaining counts of conviction); *Ayyad v. United States*, No. 16-CV-4346, 2020 WL 5018163, at *2 (S.D.N.Y. Aug. 24, 2020) (same).

In *Medunjanin*, Judge Cogan ruled that the § 2255 context meaningfully differs from remand after a direct appeal because of the "narrow scope" of § 2255 and the more limited availability of relief under that statute, which "reflects an interest in the finality of a criminal judgment . . . that is not present on direct appeal." 2020 WL 5912323, at *8. Judge Cogan concluded that a district court has the discretion to hold a de novo re-sentencing but is not required to do so. This Court agrees.

## V.

Kaziu also challenges application of the terrorism enhancement at § 3A1.4 of the Sentencing Guidelines as unconstitutionally vague. *See* ECF No. 300 at 19. In the alternative, Kaziu contends the Court should decline to apply § 3A1.4 because the "§3553(a) sentencing factors, and the parsimony clause" should be "considered as a counterweight to the Draconian impact of §3A1.4." *Id*. at 27.

As to the first argument, the Supreme Court held in *Beckles v. United States* that "the Guidelines are not subject to a vagueness challenge." __ U.S. __, 137 S. Ct. 886, 892 (2017). Nor is there any case law indicating that *Johnson* and its progeny should invalidate the terrorism enhancement at § 3A1.4 of the Guidelines. The Second Circuit has recently affirmed cases applying the terrorism enhancement. *See United States v. Al-Farekh*, 810 F. App'x 21, 27 (2d Cir. 2020); *United States v. Mumuni Saleh*, 946 F.3d 97, 112 n.64 (2d Cir. 2019) (applying U.S.S.G. § 3A1.4 and "enforcing the aforementioned congressional directives by directing district courts to increase a defendant's offense level by 12 and his criminal history category to VI if his felony 'involved, or was intended to promote, a federal crime of terrorism'") (quoting U.S.S.G. § 3A1.4).

As to the second argument, the enhancement is applicable because, as the government explains, Kaziu's attempts to join al-Qaeda, the Taliban, and al-Shabaab were accompanied by plans to kill U.S. soldiers in Afghanistan or Kosovo and foreign government officials in Somalia. Significantly, Kaziu conceded the applicability of the terrorism enhancement on direct appeal. *See United States v. Kaziu*, 559 F. App'x 32, 39 (2d Cir. 2014) ("Kaziu admits that he was found guilty of a 'federal crime of terrorism'") (quoting U.S.S.G. § 3A1.4(a)).

7

## VI.

Kaziu is seeking a substantial sentencing reduction. Habeas counsel argues a sentence of "no more than fifteen years with credit for time served would be reasonable and appropriate." ECF No. 300 at 2. As a result, the Court is reweighing the § 3553(a) factors Habeas counsel has written in detail about the origins of Kaziu's interest in radical Islam. He frames Kaziu's crimes as the indiscretions of a young person who was immature, uneducated, and seeking a sense of meaning in his life through religious practices. These interests eventually led to a naïve form of radicalization that fortunately did not produce any actual violence. Habeas counsel contends that Kaziu has matured significantly while serving over a decade in custody and no longer holds radical beliefs. He has proffered the testimony of an expert who suggests Kaziu presents the typical profile for mature adjustment post-incarceration.

The government characterizes Kaziu as an unrepentant terrorist and a serious public safety risk. Trial testimony established that Kaziu sought to "go to Waziristan and join up with Taliban and Al Qaeda and when there [to] receive both physical and combat training . . . with guns . . . [and] ultimately from there going to Afghanistan and fighting jihad against . . . U.S. troops and its allies." *See* ECF No. 306 at 7 (citing Trial Tr. 430–31). The government casts Kaziu's resentencing arguments as an attempt to restate the same arguments that were rejected by Judge

Gleeson at the original sentencing proceeding. *See* ECF No. 306 at 23 ("even today, the defendant persists in minimizing the seriousness of his conduct, indicating that he still does not appreciate the wrongness of his actions and is professing moderation now opportunistically, in light of a potential opportunity for resentencing."). Significantly, Judge Gleeson found Kaziu's statements at his original sentencing proceeding to be self-interested and noted that he believed that if Kaziu were released he would "try to pick up where [he] left off, [and] maybe succeed this time." Sentencing Tr. 29-30.

Kaziu was sentenced to twenty-seven years imprisonment for a conspiracy that did not come to fruition. No one was physically harmed because of Kaziu's actions. Habeas counsel has passionately argued that Kaziu is a changed man, and he has obtained a GED and completed courses in education and self-improvement. Kaziu has received only two disciplinary infractions while incarcerated and none since 2012. This is significant evidence of rehabilitation that the Court may consider at resentencing. *See United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002) ("a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing"); *see also Pepper v. United States*, 562 U.S. 476, 481, (2011) ("a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance").

Kaziu's conduct in attempting to join a terrorist group with the goal of waging violence against American troops appropriately led to his conviction and a lengthy sentence. However, after rebalancing the 3553(a) sentencing factors the Court believes that a sentence of twenty-five years imprisonment, followed by lifetime supervision is "sufficient, but not greater than necessary to fulfill the purposes of sentencing." *United States v. Pugh*, 945 F.3d 9, 24 (2d Cir. 2019) (quoting 18 U.S.C. § 3553(a)).

## CONCLUSION

Petitioner's motion for habeas relief is GRANTED in part and DENIED in part. Kaziu's conviction as to Count One remains in effect, except that the sentence is reduced to twenty-five years imprisonment, followed by lifetime supervision. The Court vacates Kaziu's conviction as to Count Four. Counts Two and Three are unaffected by this decision.

**SO ORDERED.**

                                                                                               /S/ Frederic Block  
                                                                                               FREDERIC BLOCK  
                                                                                               Senior United States District Judge

Brooklyn, New York  
May 3, 2021